UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CHRISTINE INTRAVIA,

    Plaintiff,

        v.                                        No. 3:18-cv-01386(WIG)

ANDREW M. SAUL,
Commissioner of
Social Security[1],

    Defendant.

                                        X

## **RULING ON PENDING MOTIONS**

This is an administrative appeal following the denial of the plaintiff, Christine Intravia's, application for Title II disability insurance benefits ("DIB"). It is brought pursuant to 42 U.S.C. § 405(g).[2] Plaintiff now moves for an order reversing the decision of the Commissioner of the Social Security Administration ("the Commissioner"), or in the alternative, an order remanding

---

[1] The President nominated Andrew M. Saul to be Commissioner of Social Security; the Senate Confirmed his appointment on June 4, 2019, vote number 133. He is substituted pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to amend the caption to comply with this substitution.

[2] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. § 404.929. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. § 404.967. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

1

her case for a rehearing. [Doc. # 14]. The Commissioner, in turn, has moved for an order affirming his decision. [Doc. # 15]. After careful consideration of the arguments raised by both parties, and thorough review of the administrative record, the Court grants the Commissioner's motion to affirm.

## **LEGAL STANDARD**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant will meet this definition if his or her impairments are of such severity that the claimant cannot perform pervious work and also cannot, considering the claimant's age education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner must follow a sequential evaluation process for assessing disability claims. The five steps of this process are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the Listings). If so, and it meets the durational requirements, the Commissioner will consider the claimant disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe

impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform. *See* 20 C.F.R. § 404.1520. The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and then whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla or touch of proof here and there in the record." *Id.* If the Commissioner's decision is supported by substantial evidence, that decision will be

sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

## **BACKGROUND**

### a. Facts

Plaintiff filed her DIB application on February 23, 2015, alleging a disability onset date of January 1, 2015. Plaintiff's claim was denied at both the initial and reconsideration levels. Thereafter, Plaintiff requested a hearing. On March 3, 2017, a hearing was held before Administrative Law Judge Edward F. Sweeney ("the ALJ"). Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing. On May 3, 2017, the ALJ issued a decision denying Plaintiff's claim. Plaintiff timely requested review of the ALJ's decision by the Appeals Council. On July 3, 2018, the Appeals Council denied review, making the ALJ's decision the final determination of the Commissioner. This action followed.

Plaintiff was forty-four years old on the alleged disability onset date. (R. 119). She has a high school education. (R. 120). Plaintiff has experience working in a coffee shop. (*Id.*). She last worked in January 2015. (R. 121). Plaintiff's complete medical history is set forth in the Joint Stipulation of Facts filed by the parties. [Doc. # 14-1]. The Court adopts this stipulation and incorporates it by reference herein.

### b. The ALJ's Decision

The ALJ followed the sequential evaluation process to determine whether Plaintiff was disabled under the Social Security Act. At Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged onset date. (R. 14). At Step Two, the ALJ found Plaintiff's degenerative disc disease of the cervical and lumbar spine to be a severe impairment. (*Id.*). The ALJ concluded that carpal tunnel syndrome was not a severe impairment. (R. 14-15).

4

At Step Three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 15). Next, the ALJ determined Plaintiff retains the following residual functional capacity[3]:

> Plaintiff can perform light work except she can occasionally climb ladders, ropes, scaffolds, ramps, and stairs, and can frequently kneel, crouch, and crawl.

(R. 15-9). At Step Four, the ALJ found Plaintiff is unable to perform past relevant work. (R. 19). Finally, at Step Five, the ALJ relied on the testimony of the VE to conclude that there are jobs existing in significant numbers in the national economy Plaintiff can perform. (R. 20). Specifically, the VE testified that a person with Plaintiff's vocational factors and the assessed RFC can perform the positions of cashier, cafeteria attendant, and fast food worker. (*Id.*). Accordingly, the ALJ determined Plaintiff was not disabled.

## DISCUSSION

Plaintiff raises several arguments in support of her Motion to Reverse, which the Court will address in turn.

1. **The Step Two Determination**

Plaintiff first argues that the ALJ should have found her carpal tunnel syndrome and her pulmonary impairment to be severe. The Commissioner responds that Plaintiff has not established the severity of either of these conditions.

At Step Two, the ALJ determines the "severity" of a claimant's impairments. A medically determinable impairment, or a combination of impairments, is not severe "if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522. In other words,"[a] finding of 'not severe' should be made if the medical

---

[3] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his or her limitations. 20 C.F.R. § 404.1545(a)(1).

evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97-CV-5759, 1999 WL 294727, at *5 (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987)). "The claimant bears the burden of presenting evidence establishing severity." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012). While the second step of the evaluation process is limited to screening out *de minimis* claims, "the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe." *Id.* (internal quotation marks omitted).

The record clearly demonstrates Plaintiff has been diagnosed with, and treated for, carpal tunnel syndrome. She had a bilateral carpal tunnel release in 2005. (R. 658). In 2016, she had a left carpal tunnel and cubital tunnel release. (R. 702). She also had injections to treat symptoms in her right wrist in 2016. (R. 663, 698). The existence of an impairment, however, is insufficient to establish severity. Plaintiff must also show that the impairment had an impact on her ability to work. She has not done so here. Although Plaintiff testified she has difficulty picking up and holding objects, the record as a whole overwhelmingly supports a finding that her carpal tunnel syndrome had no more than a minimal impact on her ability to work. After her 2016 surgery and treatment, she was doing well, had no significant problems, and was able to complete activities such as shooting guns which she had previously been unable to do; her surgeon, Dr. Bontempo, cleared her to resume activities as tolerated. (R. 698). In August 2015, Dr. Berger, a consultative examiner, observed Plaintiff had no wrist tenderness, good grip strength, and normal reflexes in the upper extremities. (R. 588-89). Further, the state agency medical consultants reviewed Plaintiff's medical history and assessed no manipulative limitations. (R. 156, 168). In addition, Plaintiff testified that she was able to dust, vacuum, do

laundry, drive, care for pets, and grocery shop. (R. 120-124). In all, there is substantial evidence to support the ALJ's finding that Plaintiff's carpal tunnel syndrome was not a severe impairment.

As to Plaintiff's pulmonary condition, here, too, the record supports the existence of an impairment, but not of its severity. Plaintiff, a current light smoker, was referred to Dr. Shatz for a "question of COPD" in November 2016. (R. 711). Pulmonary function tests were suggestive of mild emphysema. (R. 714). There was, however, *no* evidence that this condition resulted in *any* work-related limitations. Thus, the non-severe finding was not in error.

Further, an AJL's finding that an impairment is not severe at Step Two is harmless error when the ALJ finds other severe impairments and continues with the sequential evaluation. *See Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 402 (D. Conn. 2012), *aff'd,* 515 F. App'x 32 (2d Cir. 2013). In such a circumstance, "because the ALJ did find several severe impairments and proceeded in the sequential process, all impairments, whether severe or not, were considered as part of the remaining steps." *Id.* Here, in formulating the RFC, the ALJ extensively discussed the medical records pertaining to Plaintiff's hands and wrists. (R. 17-18). He also discussed Plaintiff's hearing testimony which does not mention a pulmonary impairment or any symptoms thereof in relation to her inability to work. Therefore, even if there was an error at Step Two, that error would be harmless in this case.

2. **The RFC**

Plaintiff next argues that the ALJ's RFC assessment is not supported by substantial evidence. Specifically, she avers that the ALJ erred in his weighing of the opinion evidence. Plaintiff also maintains that the ALJ erred by failing to incorporate into the RFC additional limitations. The Commissioner responds that the ALJ properly weighed the medical opinions, and that the assessed RFC is supported by substantial evidence.

7

## A. *Weighing of Opinion Evidence*

The treating physician rule provides that a treating source's opinion on the nature or severity of a claimant's impairments will be given controlling weight when it is well-supported by, and not inconsistent with, other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not controlling, the ALJ must consider several factors in determining how much weight it should receive. *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). Those factors include "(1) the frequently, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); 20 C.F.R. § 404.1527(c)(2). After considering these factors, the ALJ is required to "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). In so doing, the ALJ must provide "good reasons" for the weight allotted. *Burgess,* 537 F.3d at 129. While an ALJ's failure to provide good reasons for the weight given to a treating source's opinion is grounds for remand, *Halloran*, 362 F.3d at 33, the ALJ is not required to "slavish[ly] recite[]each and every factor where the ALJ's reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

Here, Dr. Bontempo, the surgeon who treated Plaintiff for carpal tunnel syndrome, opined Plaintiff could work without restriction. The ALJ gave this opinion great weight as it related to Plaintiff's abilities to use her hands. (R. 18). Plaintiff argues that the ALJ misstated Dr. Bontempo's opinion as to her ability to work because it applied only to a hand laceration that had resolved and not to her carpal tunnel syndrome overall.

8

Dr. Bontempo did treat Plaintiff for a laceration in May 2015. (R. 574). He assessed her unable to work as of May 8, 2015 and then cleared her to return to work without restriction as of June 1, 2015. (R. 576, 579). Even if Plaintiff is correct in her argument that this assessment related only to the laceration (which is unlikely given Dr. Bontempo was contemporaneously treating Plaintiff for her carpal tunnel symptoms), there are other opinions – from October and December 2016 – which clearly apply to her hand and wrist use overall. In October 2016, ten days after the left carpal and cubital tunnel release surgery, Dr. Bontempo stated Plaintiff was doing well, did not have any issues with numbness or tingling, and could continue using her hand as tolerated without any restriction. (R. 700). Likewise, in December 2016, after a second injection on the right side for carpal tunnel, Dr. Bontempo stated Plaintiff could "resume all activities as tolerated as she has been doing." (R. 698). Dr. Bontempo observed Plaintiff had full motion of the left elbow, had minimal swelling, could make a full fist and fully extend her fingers, and had full strength in the right hand. (R. 698). Thus, the ALJ's reading of Dr. Bontempo's opinions is correct, and his decision to give the opinions great weight is supported by Dr. Bontempo's treatment notes.

Plaintiff also claims the ALJ erred in not giving significant weight to the three opinions of her chiropractor, Dr. DeFrancesco. Specifically, she avers that the ALJ's disregard of the opinions was based on a misreading of the treatment records.

On April 30, 2015, Dr. DeFrancesco completed a Disability Determination Services form in which he opined Plaintiff could lift and carry less than ten pounds on a frequent basis and less than twenty pounds on an occasional basis. (R. 592). He found she could stand less than two hours in an eight-hour day, walk less than thirty minutes in an eight-hour day, and sit less than one hour in an eight-hour day. (*Id.*). On a "yes" or "no" section of the form, he assessed she could use foot controls

9

and hand controls, could perform gross manipulation, could write, and had palpitation in her hands. (*Id.*). He assessed she could not climb, stoop, crouch, or reach. (*Id.*).

On a second such form, which was undated, Dr. DeFrancesco opined Plaintiff could lift and carry less than twenty pounds on a frequent basis and less than twenty-five pounds on an occasional basis. (R. 590). He found she could stand less than two-and-a-half hours in an eight-hour day, walk less than sixty minutes in an eight-hour day, and sit less than two hours in an eight-hour day. (*Id.*). He completed the "yes" or "no" section of the form as he had on the April 30, 2015 form. (*Id.*).

On March 1, 2017, Dr. DeFrancesco wrote a letter indicating Plaintiff had been evaluated in his office with regard to standing, sitting, and lifting. (R. 707). He opined she was unable to lift more than ten pounds, unable to sit for more than thirty minutes at a time and should only sit for maximum of two hours per day, and is unable to stand more than forty minutes at a time and should only stand for maximum of four hours per day. (*Id.*).

The ALJ considered these three opinions, found they were supported by only limited objective findings and unsupported by Dr. DeFrancesco's treatment notes, and gave them little weight. (R. 18-19).

The opinions of Dr. DeFrancesco, a chiropractor, are not covered by the treating physician rule. *See Diaz v. Shalala*, 59 F.3d 307, 309 (2d Cir. 1995). A chiropractor is not considered an "acceptable medical source" under the regulations. 20 C.F.R. § 404.1527(d). Rather, a chiropractor is an "other source" whose opinion can be evaluated "to show the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to function." *Titles II & XVI: Considering Opinions & Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims*, SSR 06-03P (S.S.A. Aug. 9, 2006). Thus, the ALJ must consider Dr. DeFrancesco's opinions, but need not afford them controlling weight.

The ALJ properly considered Dr. DeFrancesco's opinions and found them unsupported by Dr. DeFrancesco's treatment notes; these treatment notes contained limited objective findings and indicated Plaintiff's condition was largely under control. Chiropractic notes from July through October 2015 indicate Plaintiff was asymptomatic and her condition was well-controlled. (R. 605, 606, 607, 608). While Plaintiff had some pain Dr. DeFrancesco characterized as a flare-up in November 2015, she was showing improvement by December 2015. (R. 601, 602). She was noted as being "moderately improved" in March 2016, and was released from active care at that time. (R. 651).

The ALJ also discussed other evidence in the record inconsistent with Dr. DeFrancesco's opinions. Dr. Berger found that while straight leg raises elicited pain bilaterally, Plaintiff could bend at the waist and had normal gait, strength, reflexes, and tone in the lower extremities. (R. 589). And, Plaintiff's daily activities, which include doing household chores, driving, and grocery shopping, are inconsistent with the level of limitation to which Dr. DeFranceso opined. When assessing opinions provided by a chiropractor, "[a]n ALJ has discretion to determine how much weight to give the opinions…, but should consider the opinions and explain what weight he gives those opinions." *Lolo v. Colvin*, No. 15-CV-0625-A, 2017 WL 85425, at *7 (W.D.N.Y. Jan. 10, 2017). The ALJ has done that here.

### B. Additional Limitations

Finally, Plaintiff argues the limitations in the RFC are insufficient to account for her impairments. Specifically, she first claims that the RFC should have included limitations to occasional stooping and crawling. Even if the RFC was limited in this way, the outcome of this case would not be impacted. None of the jobs the VE identified – cashier, cafeteria attendant, and fast food worker – require any crawling, and the cafeteria attendant and fast food worker

positions involve only occasional stooping. *See* Doc. # 14-2 (Plaintiff's Appendix: Dictionary of Occupational Titles 211.462.010; 311.677-010; 311.472-010). Therefore, remand on this basis is unnecessary. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("Where application of the correct legal standard could lead to only one conclusion, we need not remand.").

Second, Plaintiff claims that the that RFC should have contained a sit/stand option based on Dr. DeFrancesco's opinions. As discussed above, however, the record does not support the limitations to which Dr. DeFrancesco opined. And third, Plaintiff claims the RFC should have limited her to occasional handling, fingering, and feeling, and to no concentrated exposure to pulmonary irritants. As discussed in relation to the Step Two determination, there was no evidence that Plaintiff's carpal tunnel syndrome or pulmonary condition affected her ability to perform basic work activities. Accordingly, Plaintiff has not shown that the ALJ's assessed RFC was insufficient. Plaintiff bears the burden of proving she cannot perform the assessed RFC. *See* 20 C.F.R. § 404.1545. She has not done so here.

## **Conclusion**

In all, when the Court applies, as it must, the substantial evidence standard, it is required to affirm the decision of the Commissioner in this case. "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier*, 606 F.3d at 49 (internal quotations marks omitted). This means that when the medical evidence "is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre*, 758 F.3d at 149.

Therefore, after a thorough review of the record and consideration of all arguments Plaintiff has raised, the Court finds that the ALJ did not commit legal error and that his opinion

is supported by substantial evidence. Accordingly, the Court grants Defendant's Motion to Affirm and denies Plaintiff's Motion to Reverse.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c). The Clerk is directed to enter judgment in favor of the defendant and close this case.

SO ORDERED, this  5th  day of August, 2019, at Bridgeport, Connecticut.

 */s/ William I. Garfinkel*
WILLIAM I. GARFINKEL
United States Magistrate Judge